5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 0 8 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ANA PATRICIA CERDA,<br>  et al, ) | |
| ) | |
| Plaintiff/Petitioner, ) | No. B-02-109 |
| ) | |
| v. ) | |
| ) | |
| E.M. TROMINSKI, et al., ) | |
| ) | |
| Defendants/Respondents. ) | |

### DEFENDANTS/RESPONDENTS' MOTION TO DISMISS

Defendants/Respondents E.M. Trominski and John Ashcroft (collectively referred to as "Defendants") hereby move the Court to dismiss Plaintiff/Petitioner's *Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief* ("Habeas Petition") for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

### BACKGROUND

Plaintiff Ana Patricia Cerda-Cardenas ("Cerda") is a native and citizen of Mexico. Habeas Petition at ¶ 3. She alleges that she entered the United States in 1984 as a lawful permanent resident of the United States when she was two or three years old. <u>Id.</u> at ¶ 4. Cerda claims that on May 3, 2002, she attempted to re-enter the United States after borrowing a "friend's" car. <u>Id.</u> at ¶ 6. The friend asked that she fill the car with gas and promised to reimburse her upon her arrival. <u>Id.</u>

When she reached the bridge, marijuana was discovered in the car, and she was detained at the Port Isabel Service Processing Center.  Id.

On May 4, 2002, Cerda was served with a Notice to Appear, charging her with being an alien removable under Section 212(a)(2)(C) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(2)(C) (1994).  Government's Exhibit ("Gov't Exh.") 1.

Cerda alleges that no one ever informed her of the availability of parole.  Habeas Petition at ¶ 8.  On May 29, 2002, Cerda moved to join the instant habeas petition with the litigation in Hernandez-Lejia v. Trominski, No. B-01-206 (S.D. Tex.).  See Gov't Exh. 2.  The motion admitted that prior to the filing of the habeas petition, Cerda had never been informed of parole - not even by her attorney of record.  Id. at 4.

On May 28, 2002, Cerda applied for parole into the United States.  Gov't Exh. 3.  On June 3, 2002, Cerda was granted release on parole.  Gov't Exh. 4.  She is thus no longer being detained.  Gov't Exh. 5.

Cerda filed her Habeas Petition on May 31, 2002.  The Habeas Petition raises four claims.  She urges that her habeas petition be granted and that Defendants be required to give individualized notice of parole, to provide a parole hearing before an immigration judge, and to grant parole.  Habeas Petition at 4.

2

She also seeks a declaratory judgment that the lack of notice of parole and the lack of entitlement to parole violates due process and equal protection, and that in order to detain her, Defendants must show "special justification." Id. Cerda seeks injunctive relief preventing INS from detaining her without a hearing before an immigration judge. Id. at 5. Finally, Cerda claims that it is a violation of equal protection to grant bond to lawful permanent resident aliens while denying it to those detained at a port of entry. Id. at 5-6. Reframed, her claims are ultimately reduced to four counts: (1) that she has a due process right to individualized notice of parole; (2) that Congress lacks authority to subject returning, inadmissible criminal aliens to detention and parole requirements; (3) that the Attorney General lacks authority to confer parole authority over permanent resident aliens seeking admission on the district directors while permitting immigration judges to determine the release of lawful permanent resident aliens who never leave the United States; and (4) that she is entitled as a matter of due process to a hearing before an immigration judge.[1]

---

[1]  It bears mentioning that, unlike the aliens in Hernandez-Leija v. Trominski, No. B-01-206, Cerda does not challenge the Attorney General's "unfettered discretion" in parole determinations, nor does she challenge the extent of personal property an alien in detention is permitted to possess.  See Hernandez-Leija v. Trominski, No. B-01-206, Docket Entry 2, First Amended Petition for Writ of Habeas Corpus and Class Action Complaint for Declaratory and Injunctive Relief at ¶ 49.

## ARGUMENT

I.  **CERDA'S CLAIMS REGARDING THE FAILURE TO PROVIDE NOTICE OF THE AVAILABILITY OF PAROLE AND THE DELEGATION OF PAROLE AUTHORITY TO THE DISTRICT DIRECTOR ARE MOOT AND THE COURT SHOULD THUS DISMISS THOSE CLAIMS FOR LACK OF JURISDICTION UNDER FED. R. CIV. P. 12(b)(1)**

Cerda's claims regarding the failure to provide notice of parole and equal protection and due process implications of the Attorney General's procedures are moot.  A litigant must have suffered, or be threatened with, an actual injury traceable to the defendants and likely to be redressed by a favorable judicial decision.  Lewis v. Continental Bank, 494 U.S. 472, 477 (1990). The courts may not "decide questions that cannot affect the rights of litigants in the case before them."  Lewis v. Continental Bank, 494 U.S. at 477.  A federal court may only decide "real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  Id.  While a suit may have been considered alive at the inception of the action, "[t]he parties must continue to have 'personal stake in the outcome' of the lawsuit."  Id. at 478, citing Los Angeles v. Lyons, 461 U.S. 95, 101 (1990).

Here, Cerda purports to challenge the alleged failure of INS to provide notice to her of the availability of parole and the failure to give her a hearing before an immigration judge.

4

However, as Cerda admits, she ultimately received notice of
parole - indeed, she obtained parole.  Gov't Exh. 4 & 5.
Accordingly, as Cerda is aware of the availability of parole, her
claims regarding the lack of notice are moot, and the Court lacks
authority to grant an injunction.  Moreover, the grant of parole
means that a decision regarding her challenges to congressional
authority to require parole and the Executive's authority to
delegate the decision will not affect her rights.  Thus, the
claims are moot.

In <u>Hernandez-Leija</u>, Cerda suggested that she remains a
viable petitioner notwithstanding her release because "she could
encounter the same problem in the future, when counsel Is not
available to request parole on her behalf, or explain how to make
such request."  <u>See</u> Gov't Exhibit 5 at 2.  Cerda's suggestion is
contrary to law.  In order to get around the mootness difficulty,
Cerda must demonstrate that it is a <u>certainty</u> that she will again
face the problem of being detained at the border, wholly unaware
of the availability of parole.  <u>See</u> <u>City of Los Angeles v. Lyons</u>,
461 U.S. 95, 105-106 (1983).  She cannot make such a showing.
She is now aware of the availability of parole and in light of
her retention of counsel in her removal proceedings, she will not
be without legal resources and knowledge to obtain the necessary
information regarding the particulars of parole in the future.
Indeed, the fact that her attorney helped her seek parole means

that she is now charged with knowledge of the availability of
parole.  Accordingly, her claim is moot and the petition must be
dismissed.

## II.   CERDA'S HABEAS PETITION SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(1) BECAUSE CERDA HAD NOT EXHAUSTED HER ADMINISTRATIVE REMEDIES AT THE TIME OF THE FILING

The Court should dismiss the habeas petition because, at the
time of its filing, Cerda had not exhausted administrative
remedies by requesting parole.  Generally, the courts require an
exhaustion of remedies.  McCarthy v. Madigan, 503 U.S. 140, 144
(1992).  "Exhaustion is required because it serves the twin
purposes of protecting administrative agency authority and
promoting judicial efficiency."  Id. at 145.  Above and beyond
these twin purposes, the requirement of exhaustion has been found
to serve a variety of purposes, such as:  (1) to avoid premature
interruption of the administrative process; (2) to let the agency
develop the necessary factual background upon which decisions
should be based; (3) to permit the agency to exercise its
discretion or apply its expertise; (4) to improve the efficiency
of the administrative process; (5) to conserve scarce judicial
resources, since the complaining party may be successful in
vindicating rights in the administrative process and the courts
may never have to intervene; (6) to give the agency a chance to
discover and correct its own errors; and (7) to avoid the
possibility that "frequent and deliberate flouting of

6

administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." Patsy v. Florida International University, 634 F.2d 900, 903, 904-05, (5th Cir. 1979), rev'd on other grounds sub nom. Patsy v. Florida International University, 457 U.S. 496 (1982) (citing McKart v. U.S., 395 U.S. 185, 193-95 (1969).)  "The exhaustion of administrative remedies requires not that only administrative remedies selected by the complainant be first exhausted, but instead that all those prescribed administrative remedies which might provide appropriate relief be pursued prior to seeking relief in the federal courts." Hessbrook v. Lennon, 777 F.2d 999, 1002 (5th Cir. 1985) (emphasis added).  Thus, when an alternative mode exists for obtaining the desired relief, the plaintiff is obliged to pursue it.  Id. at 1003.  The fact that a plaintiff may suffer an irreparable injury by having to exhaust administrative remedies alone is no reason not to exhaust those remedies.  Myers v. Bethlehem Shipbuilding, 303 U.S. 41, 50 (1938) (emphasis added).

In the instant case, Cerda had not exhausted her administrative remedies at the time of the filing of the habeas petition.  Cerda did not apply for parole before the district director until May 28, 2002.  Gov't Exh. 3.  She filed her habeas petition only three days afterwards without awaiting a decision on the application.  As it stands, she was granted parole on June

3, 2002 – only six days after her request.  <u>See</u> Gov't Exh. 4.
Accordingly, it is not for Cerda to flout or circumvent
administrative authority by seeking to challenge who her
adjudicator should be before the administrative procedure played
itself out.  <u>Florida International University</u>, 634 F.2d at 903,
904-05.  Indeed, the waste of judicial resources is exemplified
by this case:  Cerda's parole application before the district
director proved successful and was expediently adjudicated.  It
is not for the Court to permit her to sustain an action which
should have never been brought.  Accordingly, the Court should
dismiss the habeas petition.

### III. CERDA'S HABEAS PETITION MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(1) BECAUSE IT WAS NOT FILED BY CERDA, WITH HER APPROVAL, OR BY A QUALIFIED NEXT FRIEND

The Court should dismiss Cerda's habeas petition because it
was not filed by her, with her knowledge and approval, or by a
qualified next friend.  A person in custody may file a petition
for writ of habeas corpus pursuant to 28 U.S.C. § 2241(a), which
provides:

> Writs of habeas corpus may be granted by the
> Supreme Court, any justice thereof, the district
> courts and any circuit judge within their
> respective jurisdictions.  The order of a circuit
> judge shall be entered in the records of the
> district court of the district wherein the
> restraint complained of is had.

In filing such a petition for review, Congress requires that the
"[a]pplication for writ of habeas corpus shall be in writing

signed and verified by the person for whose relief it is intended or by someone acting in his behalf."  28 U.S.C. § 2242.

Cerda's habeas petition must be dismissed because it is not signed and verified by her.  Indeed, as the motion filed in Hernandez-Leija admits, Cerda was wholly unaware of the filing of the habeas petition.  Gov't Exh. 1 at 4.  Thus, the petition was improperly filed and must be dismissed.

Moreover, the habeas petition has not been signed and verified by "someone acting in [her] behalf."  This latter part of § 2242 is known as the "next friend" exception.  Weber v. Garza, 570 F.2d 511, 513 (5th Cir. 1978).  "'Next friend' petitions are permitted only if it is clearly demonstrated that the individual is unable to seek relief on his own behalf or is mentally incompetent to do so."  Lovelace v. Lynaugh, 809 F.2d 1136, 1137 (5th Cir. 1987).  In assessing the propriety of a next friend, the courts examine two questions:  "(1) why the detained person did not sign and verify the petition and (2) the relationship and interest of the would be 'next friend.'"  Weber, 570 F.2d at 513-14.  The relationship and interest of the next friend must be substantial.  Id. at 514 (a power of attorney cannot alone transform a person into a next friend).  Moreover, this showing must be made in the petition, itself.  Id. at 514 n.4 ("the complaint must set forth some reason or explanation satisfactory to the court showing why the detained person does

not sign and verify the complaint and who 'the next friend' is")
(quoting <u>United States ex rel. Bryant v. Houston</u>, 273 F.915 2d
Cir. 1921).

Here, the habeas petition is devoid of any explanation as to
why Cerda could not sign and verify the complaint, nor does it
make any effort to establish the relationship of any would-be
next friend.  Indeed, by all appearance, this is a petition which
has never been signed and verified by Cerda, nor was it filed
with her knowledge and consent, nor by someone acting in her
behalf.  Accordingly, the petition was improperly filed and
should be dismissed.

IV.    **THE COURT SHOULD DISMISS CERDA'S CLAIMS REGARDING
        INDIVIDUALIZED NOTICE OF PAROLE UNDER FED. R. CIV. P.
        12(b)(6) FOR FAILURE TO STATE A CLAIM**

The Court should dismiss Counts 1, 2, 3, and 4, in which
Cerda claims that she has a right to individual notice of her
privilege to apply for parole into the United States pending
removal proceedings because she has failed to state a claim upon
which relief may be granted.  Habeas Petition at 4-6.

A.    **The Standard Under Fed. R. Civ. P. 12(b)(6)**

When ruling on a Rule 12(b)(6) motion, "the court must
liberally construe the complaint in favor of the plaintiff and
assume the truth of all pleaded facts." <u>Oliver v. Scott</u>, 276
F.3d 736, 740 (5th Cir. 2002) (citing <u>Brown v. Nationsbank Corp.</u>,
188 F.3d 579, 586 (5th Cir. 1999). "The court may dismiss a

claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999).

**B.    Cerda Is Not Entitled To Individualized Notice Regarding The Availability Of Parole**

The Court should dismiss the Habeas Petition for failure to state a claim requiring individualized notice of parole. Contrary to her suggestion, Cerda is not entitled to individualized notice of the availability of parole.  While Cerda purports to base her claims on "the laws and Constitution of the United States, as well as international law and treaty obligations," Habeas Petition at 4, Cerda's claims are based solely on due process.  Cerda's arguments utterly lack merit.

The Supreme Court recently explained that, in evaluating whether individualized notice is required, the Mathews test is not the appropriate test.  Dusenbery v. United States, 534 U.S. 161, 122 S.Ct. 694, 699 (2002).  "[W]e have never viewed Mathews as announcing an all-embracing test for deciding due process claims."  Dusenbery, 122 S.Ct. at 699.  As the Supreme Court explained, "The Mathews balancing test was first conceived in the context of a due process challenge to the adequacy of administrative procedures used to terminate Social Security disability benefits."  Id.  However, "since [Mullane v. Central Hanover bank & Trust, 339 U.S. 306 (1950)] was decided, we have regularly turned to it when confronted with questions regarding

the adequacy of the method used to give notice." Id. (citations
omitted).  Under the Mullane test, the relevant question before
the Court is whether notice was "reasonably calculated under all
the circumstances." Dusenbery, 121 S.Ct. at 700; Mullane, 339
U.S. at 309-310.

The instant case is governed by the Supreme Court's Mullane
decision and its progeny, including City of West Covina v.
Perkins, 525 U.S. 234 (1999).  In West Covina, the Supreme Court
considered whether the City of West Covina provided adequate
notice of available remedies where a litigant was informed of the
search and seizure of certain property by the police, but where
the litigant was not given individualized notice of the available
remedies for recovering property.  Id. at 236-37.  The Supreme
Court held that individualized notice of the available procedures
for getting back seized property was not required by due process.
Id. at 241.  The Court observed that notice of the seizure of
property was necessary

> because the property owner would have no other
> reasonable means of ascertaining who was
> responsible for his loss.

Id. at 241.  However, the Court pointedly noted:

> No similar rationale justifies requiring
> individualized notice of state law remedies
> which, like those at issue here, are
> established by published, generally available
> state statutes and case law.  Once the
> property owner is informed that his property
> has been seized, he can turn to these public
> sources to learn about the remedial

12

> procedures available to him.  The City need
> not take other steps to inform him of his
> options.

Id. at 241 (citations omitted).  The Supreme Court has long held

that publication of government procedures is sufficient notice of

those procedures.  Federal Crop Insurance, Corp. v. Merrill, 332

U.S. 380, 384 (1947).

The instant case is not different from West Covina or

Dunesbury.  Here, Cerda was given individualized notice that she

was being placed in, and detained pursuant to, removal

proceedings under INA § 240.  Gov't Exh. 1.  The availability of

parole, like other forms of administrative relief, are all a

matter of public record, located both in Title 8 of the United

States Code (8 U.S.C. § 1182(d)(5)(A)) and Title 8 of the Code of

Federal Regulations (8 C.F.R. § 212.5).  Once put on notice that

her detention is the result of removal proceedings, it is up to

Cerda to pursue her remedies.  See Atkins v. Parker, 472 U.S. 115

(1985) ("The entire structure of our democratic government rests

on the premise that the individual citizen is capable of

informing himself about the particular policies that affect his

destiny").  Thus, under West Covina, this form of notice

regarding the particular administrative remedies available is

sufficient.

V.   **CERDA'S CLAIM THAT SHE IS DENIED EQUAL PROTECTION AND DUE PROCESS BY THE ATTORNEY GENERAL'S DECISION TO DELEGATE SUCH AUTHORITY TO THE DISTRICT DIRECTOR RATHER THAN IMMIGRATION JUDGES SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

The Court should also dismiss Cerda's due process and equal protection challenges to the procedures governing parole.  Cerda seeks to challenge the Attorney General's decision to confer parole authority to the District Director as a violation of equal protection and due process because the statute.  Habeas Petition at 4-6.  Her argument lacks merit.

A.   **Standard Of Review**

The standard of review of the Attorney General's decision not to parole an alien into the United States is an extremely deferential one.  <u>United States ex rel. Barbour v. District Director</u>, 491 F.2d 573 (5th Cir. 1974), <u>cert</u>. <u>denied</u>, 419 U.S. 873 (1974); <u>see</u> <u>also</u> <u>Garcia-Mir v. Smith</u>, 766 F.2d 1478, 1485 (11th Cir. 1985); <u>Jean v. Nelson</u>, 727 f.2d 957, 976 (11th Cir. 1987).  The Supreme Court has held that Congress and the Executive have extraordinarily broad power in the immigration arena to draw distinctions between aliens "that would be unacceptable if applied to citizens." <u>Fiallo</u>, 430 U.S. at 792 (1977).  As the Court explained:

> We are dealing here with an exercise of the Nation's sovereign power to admit or exclude foreigners in accordance with the perceived national interests.  Although few, if any, countries have been as generous as the United States in extending the privilege to immigrate, or in providing sanctuary to the oppressed, limits

14

> and classifications as to who shall be admitted
> are traditional and necessary elements of
> legislation in this area. . . . In the inevitable
> process of 'line drawing,' Congress has determined
> that certain classes of aliens are more likely
> than others to satisfy national objectives without
> undue cost, and it has granted preferential status
> only to those classes.

430 U.S. at 797 n.6.  Because of the concurrent authority of

Congress and the Executive, the Court's review of Executive

decisions is similarly narrow.  Jean v. Nelson, 727 F.2d 957, 976

(11th Cir. 1984).

The proper standard of review for evaluating the Executive's

decision to deny parole and the procedures afforded therefor is

whether such denial is based upon a "facially legitimate and bona

fide reason."  Fiallo v. Bell, 430 U.S. 787, 794 (1977), quoting

Kleindienst v. Mandel, 408 U.S. 753, 770 (1972); Jean, 727 F.2d

at 976-77; Almario v. Attorney General, 872 F.2d 147, 151 (6th

Cir. 1989) ("the holdings of Kleindienst and Fiallo require that

we exercise a very narrow standard of review assuming the

classification at issue in this case is supported by a facially

legitimate and bona fide reason"); Matter of Longstaff, 716 F.2d

1439, 1442-443 (5th Cir. 1983) ("The constraints of rationality

imposed by the constitutional requirements of substantive due

process and of nondiscrimination exacted by the equal protection

component of the due process clause do not limit the federal

government's power to regulate either immigration or

naturalization").  The government has no obligation to produce

15

evidence to sustain the rationality of a classification.  <u>Heller</u>
<u>v. Doe</u>, 509 U.S. 312, 319 (1993).  A decision by the Executive
bears a "strong presumption of validity," and those attacking the
rationality of the decision have "the burden to negate every
conceivable basis which might support it, whether or not the
basis has a foundation in the record."  <u>Id</u>. at 320 (internal
citation omitted).  Once a "facially legitimate and bona fide"
reason is adduced, it is improper for a court to look behind that
decision.  <u>Kleindienst</u>, 408 U.S. at 770 ("when the Executive
exercises this power negatively on the basis of a facially
legitimate and bona fide reason, the courts will neither look
behind the exercise of that discretion, nor test it by balancing
its justification against [constitutional] interests. . .");
<u>Jean</u>, 727 F.2d at 977; <u>Campos v. INS</u>, 961 F.2d 309, 316 (1st Cir.
1992).  The Court's only task is to determine whether the
officials acted "within the scope of their delegated powers."
<u>Jean</u>, 727 F.2d at 977.

    This narrow standard of review applies even where other
constitutional rights may be implicated.  For example, in
<u>Kleindienst</u>, the plaintiffs were challenging the denial of a visa
waiver to an alien so that he could enter the United States for
the purpose of providing lectures at several universities.
<u>Kleindeinst</u>, 408 U.S. at 761.  The plaintiffs challenged the
denial of a visa waiver, arguing that the denial denied the

American people their right to hear the alien, and that the ground of exclusion violated equal protection, due process and statutory rights. Id. 408 U.S. at 760. The Supreme Court held that the official denying the visa had provided a "facially legitimate and bona fide" reason for the denial of the visa waiver. Kleindeinst, 408 U.S. at 769.

> The fact remains, however, that the official empowered to make the decision stated that he denied a waiver because he concluded that previous abuses by Mandel made it inappropriate to grant a waiver again. With this, we think the Attorney General validly exercised the plenary power that Congress delegated to the Executive. . . .

> *        *        *

> In summary, plenary congressional power to make policies and rules for exclusion of aliens has long been firmly established. . . . Congress has delegated conditional exercise of this power to the Executive. We hold that when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justifications against the First Amendment interests of those who seek personal communication with the applicant.

Kleindeinst, 408 U.S. at 69-70.

### B.    Congress Subjected Arriving Permanent Resident Aliens To Parole On The Basis Of A Facially Legitimate And Bona Fide Reason

In the instant case, Congress had ample authority to subject returning lawful permanent resident aliens to parole. As a starting point, Congress has plenary authority to determine who is admitted into the United States and under what conditions.

See <u>United States ex rel. Knauff v. Shaughnessy</u>, 338 U.S. 537,

544 (1950) ("Whatever the procedure authorized by Congress is, it

is due process as far as an alien denied entry is concerned").

For aliens at the border seeking admission, there is no

constitutional right to enter or be paroled into the United

States. <u>Kleindienst v. Mandel</u>, 408 U.S. 753, 762 (1972); <u>Galvan</u>

<u>v. Press</u>, 347 U.S. 522, 530-32 (1954); <u>Harisiades v. Shaughnessy</u>,

342 U.S. 580, 592 (1952); <u>Jean v. Nelson</u>, 727 F.2d 957, 967 (11th

Cir. 1984).[2]

Here, Congress has ordered that an arriving alien who is not

clearly entitled to be admitted into the United States must be

detained.  8 U.S.C. § 1225(b)(2).  Congress also provided that

the Attorney General may release such aliens on parole on a case-

by-case basis.  8 U.S.C. § 1182(d)(5)(A).

Indeed, INA § 212(d)(5)(A) exemplifies Congress intent and

meaning:  that no alien will be paroled into the United States

unless their parole is for "urgent humanitarian reasons or

_____

[2]  While aliens who have been permitted to enter the United
States and are permitted to remain for a long time and establish
ties with this country are afforded some due process protections
in determining whether they have a right to remain in the United
States, the Supreme Court has been clear that "[t]he role of the
judiciary is limited to determining whether the procedures meet
the <u>essential standard of fairness</u> under the Due Process Clause
and does not extend to imposing procedures that merely displace
congressional choices of policy." <u>Landon v. Plasencia</u>, 459 U.S.
24, 32-33 (1982).  Thus, whatever minimal procedural protections,
lawful permanent residents remain subject to the minimal
procedures afforded to them, so long as those procedures are
adequate for evaluating their right to remain.  <u>Id</u>.

significant public interest." 8 U.S.C. § 1182(d)(5)(A) (2000).
The Fifth Circuit affirmed congressional authority in this area.
Gisbert v. U.S. Attorney General, 998 F.2d 1437, 1443 (5th Cir.
1993). There is no question that Congress and the Attorney
General have the authority to subject lawful permanent resident
aliens at the border to different procedures from aliens who
never left. Plasencia, 459 U.S. at 34-35. Congress has elected
to do so by deeming Cerda to be an "arriving alien" who is not
presumed to be admissible. See INA § 101(a)(13)(C), 8 U.S.C.
§ 1101(a)(13)(C) (Supp. 1997). Congress has ample authority to
require a lawful permanent resident alien to seek parole. Thus,
Congress subjected returning, criminal aliens to arriving alien
status, knowing full well that they, too, would have to
demonstrate that they merited parole. It is not for Cerda,
through a lawsuit, to displace Congressional choices.

Cerda's case exemplifies some of Congress's concerns.
Congress has a definite interest in securing the nation's borders
in order to protect the populace from outsiders deemed to be
dangerous to the national interests. Among these dangerous
elements are drug offenders and drug traffickers, who are barred
from admission to the United States. 8 U.S.C. §
1182(a)(2)(A)(i)(II) & (a)(2)(C) (2000). Indeed, Congress was so
concerned with these undesirables that an inspector does not need
to "know" that the person is a drug trafficker; rather, the

19

inspector merely needs to have reason to believe that is the case.  8 U.S.C. § 1182(a)(2)(C).  Here, Cerda was caught transporting marijuana across the border.  Habeas Petition at ¶ 6.  That, itself, is "reason to believe" she is a drug trafficker, and she was charged as such.  Gov't Exh. 1.  Thus, Congress's desires are fulfilled in her case.  Accordingly, Congress has ample authority to subject her to detention and parole, and Congress has a particular interest in catching those who transport drugs across the border.

###    C.    The Attorney General Has A Facially Legitimate And Bona Fide Reason To Confer Parol Authority On The District Director

The Supreme Court has held that Congress and the Attorney General have every right to submit "excludable" lawful permanent resident aliens (now, "inadmissible") to procedures different from those provided to "deportable" lawful permanent resident aliens.  Landon v. Plasencia, 459 U.S. 24, 32-33 (1982); Chae Chan Ping v. United States, 130 U.S. 581, 609 (1889).  The only question for the courts is whether those procedures meet the minimum of due process rights.  The Supreme Court has previously held that due process – even the due process afforded to lawful permanent resident aliens – does not require an "independent adjudicator."  Marcello v. Bonds, 349 U.S. 302, 311 (1955).

Even if the Attorney General needed a facially legitimate and bona fide reason, there is ample reason to distinguish

arriving lawful permanent resident aliens from non-arriving
lawful permanent resident aliens and for placing parole authority
with the District Directors.  Congress has established a
comprehensive statutory scheme designed to meet the needs of
different circumstances.  At the border, Congress's powers are at
their greatest, and aliens, even lawful permanent resident
aliens, are in a fundamentally different position.  Gisbert, 98
F.2d at 1441, citing Shaughnessy v. United States ex rel. Mezei,
345 U.S. 206 (1953).

In addition, the needs of the Executive also play a strong
role.  Knauff, 338 U.S. at 542.  Parole under INA § 212(d)(5)(A)
is an extension of the Executive's immigration authority,
allowing the Attorney General to maintain and protect the
nation's borders.  Such authority may be delegated into the hands
of the district directors, where it is more readily wielded to
meet the "public interest" and to offer the nation's
"humanitarian concerns."  See, e.g., Jeanty v. Bulger, 204
F.Supp.2d 1366, 1380-82(S.D. Fla. 2002) (explaining the use of
the Attorney General's parole authority to enforce policy
concerns).

Furthermore, the importance of the Attorney General's choice
of procedures cannot be underestimated, particularly in today's
world climate.  The parole decision is one of sovereign
prerogative, and stands as a last protection against the entry of

21

aliens whose presence Congress and the Executive deems to be not
in the national interest.  The Attorney General's delegation
reflects a desire to reserve that sovereign authority in a manner
more accountable to the needs of the Executive.  That, itself, is
sufficient reason to justify the Attorney General's choice.

VI.  **EVEN UNDER THE MATHEWS v. ELDRIDGE DUE PROCESS ANALYSIS,
CERDA'S CLAIMS TO A RIGHT TO REQUEST PAROLE BEFORE AN
IMMIGRATION JUDGE LACK MERIT**

In the instant case, Cerda raises a due process challenge to
the absence of an impartial adjudicator in her cases.  She
desires to have parole hearings before an immigration judge
rather than making her parole request to the District Director.
Id. at 4.  While the Mathews v. Eldridge test is not the
appropriate test of Congress's and the Attorney General's
authority in this area, Cerda's claim is utterly without merit
even under that test.

A.  **The Mathews v. Eldridge Test**

Under the traditional Mathews v. Eldridge test for
procedural due process, where a liberty or property interest is
implicated, the Court will conduct a balancing of three factors:

> the interest at stake for the individual, the risk
> of an erroneous deprivation of the interest
> through the procedures used as well as the
> probable value of additional or different
> procedural safeguards, and the interest of the
> government in using the current procedures rather
> than additional or different procedures.

Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976). In performing this analysis, however, the Court must bear in mind that "[t]he role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy." Landon v. Plasencia, 459 U.S. 21, 34-35 (1982) (emphasis added). Additionally, to raise an adequate due process claim, the alien must have been actually or substantially prejudiced by the alleged inadequacy of the process afforded. Mejia-Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999), cert. denied, 121 S.Ct. 563 (2000).

### B.    Cerda Has No Liberty Interest In Parole

Cerda has no liberty interest in receiving parole into the United States, her lawful permanent resident status notwithstanding.  An alien has no liberty interest in discretionary relief.  See Finlay v. INS, 210 F.3d 556 (5th Cir. 2000), citing Tefel v. Reno, 180 F.3d 1286, 1299-1300 (11th Cir. 1999), cert. denied, 530 U.S. 1228 (2000) (no liberty interest in discretionary relief from removal); Gisbert v. U.S. Attorney General, 998 F.2d 1437, 1443 (5th Cir. 1993) (no liberty interest in parole); see also Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 264-65 (1982) (no liberty interest in discretionary relief); Cervantes-Gonzales v. INS, 232 F.3d 684, 688 (9th Cir.

2000) (alien has no right to relief); <u>Amanullah v. Nelson</u>, 811
F.2d 1, 8 (1st Cir. 1987) (no liberty interest in parole); <u>Jean</u>
<u>v. Nelson</u>, 727 F.2d 957, 972 (11th Cir. 1984) (no liberty
interest in parole).  Indeed, this is particularly appropriate
for an alien at the border, like the Cerda, where the only rights
aliens have are those afforded by Congress.  <u>Gisbert</u>, 988 F.2d at
1442.  Even as to lawful permanent resident aliens, there is no
liberty interest in a form of relief which is discretionary:
"[T]he denial of discretionary relief does not rise to the level
of a constitutional violation, even if [the alien] had been
eligible for it."  <u>Finlay v. INS</u>, 210 F.3d 556, 557-58 (5th Cir.
2000), <u>citing</u> <u>Tefel v. Reno</u>, 180 F.3d 1286 (11th Cir. 1999),
<u>cert</u>. <u>denied</u> 530 U.S. 1228 (2000).

     Cerda suggests that by virtue of her lawful permanent
resident status, she has a liberty interest in rejoining her
family and, therefore, a liberty interest in parole.  <u>See</u> Habeas
Petition at 4-5.  Cerda overstates her rights.  It may be true
that in determining whether or not a lawful permanent resident
alien will be excluded from the United States, an alien lawfully
admitted for permanent residence may have some liberty interests.
<u>See</u> <u>Landon v. Plasencia</u>, 459 U.S. 21, 33 (1982).  That, however,
does not translate into a liberty interest to be at liberty in
the United States pending those proceedings.  <u>See</u> <u>Chin Yow v.</u>
<u>United States</u>, 208 U.S. 8, 11 (1908) (previously admitted alien

must make the requisite showing to gain entry); <u>Nishimura Ekiu v.</u>
<u>United States</u>, 142 U.S. 651, 660 (1892) ("It is not within the
province of the judiciary to order that foreigners . . . shall be
permitted to enter, in opposition to the constitutional and
lawful measures of the legislative and executive branches of the
national government").  The Supreme Court specified that such
aliens remain subject to the procedures Congress imposes and
that, whatever the scope of that right, courts are not empowered
to displace congressional choices.  <u>Plasencia</u>, 459 U.S. at 33.
Lawful permanent residents at the border have very limited
rights, and the extent of their rights is consummate only with
those procedures necessary to determine whether they will be
admitted into the United States.  <u>Id</u>.  The Fifth Circuit has
rejected claims of a general liberty interest in freedom as the
basis for a challenge to the denial of parole.[3]

---

[3] The Supreme Court's decision in <u>Zadvydas v. Davis</u>, 121 S.
Ct. 2491 (2001), is not to the contrary.  <u>Zadvydas</u> made no
finding regarding a liberty interest.  Rather, the Supreme Court
merely commented that to hold that a deportable alien could be
held indefinitely would present a serious constitutional
question.  <u>Zadvydas</u>, 121 S. Ct. at 2498.  Indeed, the <u>Zadvydas</u>
Court expressly noted that aliens at the border do not possess
the same rights as aliens within the United States, acknowledging
that the former type of alien is not "in" the United States and
does not obtain the protection of the Fifth Amendment.  <u>Id</u>. at
2500.  Cerda was detained at the border and is not within the
scope of <u>Zadvydas</u>.  <u>See</u> <u>Sierra v. INS</u>, 258 F.3d 1213, 1218 (10th
Cir. 2001) (noting that whatever procedures Congress establishes
for aliens seeking admission is due process so far as such aliens
are concerned).  Therefore, her due process rights are at a
minimum.  <u>Landon v. Plasencia</u>, 459 U.S. at 33.

Indeed, parole is not among the "rights" enjoyed by lawful permanent resident aliens. Congress specified that criminal aliens such as Cerda are deemed to be seeking admission upon their return to the United States. INA § 101(a)(13)(A) & (C), 8 U.S.C. § 1101(a)(13)(A) & (C) (Supp. 1997). As such, they are subject to the procedures specified by Congress for aliens seeking admission. These procedures include inspection upon application for admission under INA § 235(a)(3), 8 U.S.C. § 1225(a)(3) (Supp. 1997). Upon their inspection, Congress provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [INA § 240, 8 U.S.C. § 1229a (Supp. 1997)]." INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A) (Supp. 1997) (emphasis added). Congress also directed that aliens arriving on land from a contiguous foreign territory may be returned to the foreign territory pending their removal proceedings. INA § 235(b)(2)(C), 8 U.S.C. § 1225(b)(2)(C) (Supp. 1997). Although the examining officer is commanded to detain the alien or return him to the contiguous territory, Congress also specified that such arriving aliens may apply for discretionary parole under INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A) (2000).

Even with respect to the availability of parole, the Fifth Circuit has explained the tenuous interest an alien has in parole:

> The petitioners' interest in immigration parole is created by the immigration statutes and is subject to the exercise of discretion by the Attorney General. 8 U.S.C. § 1182(d)(5)(A). The language of the statute does not require the Attorney General to parole any alien, nor does it mandate parole on any particular finding or findings or place any substantive restriction on the authority to deny parole. Because petitioners' interests here are contingent upon the Attorney General's discretion, they have no liberty interest in being paroled.

Gisbert, 988 F.2d at 1443. It is important to note that Congress specifically chose not to exempt criminal lawful permanent resident aliens from the need to make a showing regarding parole. Indeed, while Congress provided that returning lawful permanent resident aliens are generally not subject to parole requirements by virtue of not "seeking admission," Congress specifically exempted certain criminal aliens, such as Cerda, from that general exception, indicating an intent to make such aliens face parole requirements. INA § 101(a)(13)(C), 8 U.S.C. § 1101(a)(13)(C) (Supp. 1997). Accordingly, Cerda has no liberty interest in parole and can raise no due process claim regarding the procedures they are afforded.

27

C.  **The Balance Of Due Process Factors Favors The Government**

The balance of the risk of erroneous deprivation is minimal, the value of additional procedures is de minimus, and government retains a strong interest in the procedures presently afforded for parole.

The risk of an erroneous deprivation of parole is minimal. Congress has placed parole within the unfettered discretion of the Attorney General.  Indeed, as the Fifth Circuit has stated: "The language of the statute does not require the Attorney General to parole any alien, nor does it mandate parole on any particular finding or findings or place any substantive restriction on the authority to deny parole." Gisbert, 988 F.2d at 1443.  Because there is no case in which the Attorney General must grant parole, the risk of an erroneous deprivation is minimal.[4]

Moreover, the value of additional procedures – namely, a hearing before an immigration judge – is negligible.  Cerda

_____

[4]  It bears emphasizing that Cerda appears to want to force the INS to grant parole to all lawful permanent residents, or at least require "special justification" before she may be detained. Habeas Petition at 5.  That, however, is expressly contrary to the finding of the Fifth Circuit that the statute does not mandate the grant of parole in any case.  Gisbert, 988 F.2d at 1443.  Indeed, Cerda's argument constitutes a challenge to Congress's substantive choices of which aliens shall be subject to detention and parole requirements is not within the province of the courts.  Matter of Longstaff, 716 F.2d at 1443.  Rather, the courts may only evaluate whether lawful permanent resident aliens are afforded due process.

points to nothing that can be done in a request to an immigration judge which cannot be presented to the District Director. Indeed, looking at her particular case, Cerda made only minimal efforts before the District Director. Her letter does little more than describe the circumstances under which she was detained at the border. See Gov't Exh. 3. Indeed, her letter does little more than recite the same facts, almost verbatim, as her habeas petition. Cp. Gov't Exh. 3 with Habeas Petition at 2-4. For example, in her parole request, Cerda's application contains the statement "The undersigned has tried to tell her that this is an empty threat," Gov't Exh. 3 at 2, while the Habeas Petition alleges that "The undersigned has tried to explain to her that this is an empty threat. . . ." Habeas Petition at 4.[5] Cerda has not suggested that there is anything which can be submitted to the immigration judge which cannot be submitted to the District Director. Thus, the probable value of additional procedures would be minimal. This last point cannot be overstated. The Supreme Court has previously held that due process - even the due process afforded to lawful permanent resident aliens - does not require an "independent adjudicator." Marcello v. Bonds, 349 U.S. 302, 311 (1955).

---

[5]    It bears emphasizing that the letter makes no effort to explain why she satisfies the "urgent humanitarian reasons" or the "significant public benefit" requirements for parole.

As for the government interest in the present procedures, the Supreme Court has already stressed the weighty interest of the government:

> The government's interest in efficient administration of the immigration laws at the border also is weighty. Further, it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.

Plasencia, 459 U.S. at 34.

Here, the Attorney General has elected to delegate parole authority to the District Director. The importance of this choice cannot be underestimated, particularly in today's world climate. The parole decision is one of sovereign prerogative, and stands as a last protection against the entry of aliens whose presence Congress and the Executive deems to be not in the national interest. The Attorney General's delegation reflects a desire to reserve that sovereign authority in a manner more accountable to the needs of the Executive.

Furthermore, the imposition of hearings before an immigration judge would require the Executive to exhaust greater administrative resources. There would have to be notices of hearings before an immigration judge; there would be possible delays by aliens and their counsel; there would be rescheduling efforts; there would be translator costs; there would be the time expended by INS attorneys needed to be at the hearing; there

would be the time required by the immigration judge to adjudicate
more requests; there would be the preparation of decisions by the
immigration judges; there would be the time spent notifying the
parties of decisions; there would be the time spent on appeal to
the Board; there would be transcription costs in case of an
appeal to the Board; there would be time spent briefing the issue
to the Board; there would be the time spent by the Board
considering each appeal; there would be the time spent preparing
a decision in each appeal; and there would be the time spent
notifying the parties of such decisions.  All that time would
affect the government's ability to adjudicate other cases.  Far
from a minimal inconvenience, Cerda seeks to place a huge
administrative burden on the INS, while Cerda is presently able
to fully develop her case before the District Director.  The
government's interest clearly outweighs the utility of additional
procedures.

   **D.   Cerda Shows No Actual Prejudice**

   Furthermore, Cerda fails to show actual prejudice in the
denial of a hearing before an immigration judge.  Cerda must
affirmatively show that the result would be different for an
immigration judge applying the same criteria set forth in §
212(d)(5)(A).  Cerda cannot because she was granted parole.
Gov't Exh. 4.  Thus, she does not show actual prejudice - _i.e.,_

that the outcome would have been different.    Accordingly, her due process claims lack merit.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Petitioner's Habeas Petition for lack of jurisdiction or failure to state a claim.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General
Civil Division

GREGORY A. SERRES
United States Attorney
Southern District of Texas

DAVID V. BERNAL
Assistant Director
Office of Immigration
      Litigation

LISA M. PUTNAM
Special Assistant U.S. Attorney
Ga. Bar No. 590315/
Federal Bar No. 23937
P.O. Box 1711
Harlingen, Texas 78551
Tel:  (956) 389-7051
Fax:  (956) 389-7057

ERNESTO H. MOLINA, JR.
Senior Litigation Counsel
Attorney in Charge
Ca. Bar No. 18134
U.S. Dept. of Justice
Civil Division
Office of Immigration
      Litigation
P.O. Box 878
Washington, DC  20044
Tel:  (202) 616-9344
Fax:  (202) 616-4975
Date:  May 23, 2002

32

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2002, a copy of **Defendants/Respondents' Motion to Dismiss** and **Government's Exhibits 1 through 5** was served on Plaintiffs by Federal Express overnight delivery addressed to:

                    Lisa Brodyaga
                    17891 Landrum Park Road
                    San Benito, TX  78586


                    _____
                    ERNESTO H. MOLINA, JR.
                    Senior Litigation Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ANA PATRICIA CERDA,                )
    et al,                         )
                                   ) .
    Plaintiff/Petitioner,          )
                                   )      No. B-02-109
    v.                             )
                                   )
E.M. TROMINSKI, et al.,            )
                                   )
    Defendants/Respondents.        )
_____)

GOVERNMENT'S EXHIBIT 1

NOTICE TO APPEAR

U.S. Department of Justice
Immigration and Naturalization Service

Notice to Appear in Removal Proceedings
Under Section 240 the Immigration and Nationality Act

|  |  |
|---|---|
|  | File No.: **A44 344 250** |
| In the Matter of: **ANA PATRICIA CERDA CARDENAS** | DOB: 04/12/1982 |

Respondent: **ANA PATRICIA CERDA CARDENAS**

Currently residing at   **US INS PORT ISABEL PROCESSING CENTER
RT. 3 BOX 341
LOS FRESNOS, TEXAS 78566
956-233-4431**

Number, street, city, state, and ZIP code                    Phone Number

☒  1. You are an arriving alien.
☐  2. You are an alien present in the United States who has not been admitted or paroled.
☐  3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that:

1. You are not a citizen or national of the United States.
2. You are a citizen of Mexico and a national of Mexico.
3. On MAY 04,2002 you applied for admission at the Port of Entry at Hidalgo, Texas as Returning Resident alien.
4. At that time, approximately 92.lbs. of marijuana was found concealed in the tires of the vehicle you were driving.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provisions(s) of the law:

Section 212(a)(2)(C) of the Immigration and Nationality Act, as amended, in that a consular or immigration officer knows or has reason to believe you are an alien who is or has been an illicit trafficker in any controlled substance, or who is or has been a knowing assister, abettor, conspirator, or colluder with others in the illicit trafficking in any such controlled substance.

☐   This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear

☐   Section 235(b)(1) ordered was vacated pursuant to:   ☐  8 CFR 208.30(f)(2)   ☐  8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

**210 E. Jackson, Harlingen, Texas 78550
DATE and TIME to be determined**

(Complete Address of Immigration Court, Including Room Number, if any)

| on | to be set | at | to be determined | to show why you should not be removed from the United |
|---|---|---|---|---|
|  | (Date) |  | (Time) | States based on the charge(s) set forth above |

SPECIAL OPERATIONS INSPECTOR
(Signature and Title of Issuing Officer)

Date:   **Saturday, May 04, 2002**

HIDALGO, TEXAS
(City and State)

See reverse for important information                    Form I-862 (Rev. 4-1-97)

Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

**Request for Prompt Hearing**

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge.

(Signature of Respondent)

Before:    SPECIAL OPERATIONS INSPECTOR      Date:    **Saturday, May 04, 2002**

(Signature and Title of INS Officer)

---

**Certificate of Service**

This Notice to Appear was served on the respondent by me on _____**Saturday, May 04, 2002**_____ in the following manner and in compliance with section 239(a)(1)(F) of the Act:

☒ in person
☐ by certified mail, return receipt requeste     ☐ by regular mail

☒ Attached is a list of organizations and attorneys which provide free legal services

☒ The alien was provided oral notice in the _____**ENGLISH**_____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

(Signature of Respondent if Personally Served)      SPECIAL OPERATIONS INSPECTOR

(Signature and Title of Officer)

Form I-862 (Rev. 4-1-97)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ANA PATRICIA CERDA,            )
    et al,                     )
                               )
    Plaintiff/Petitioner,      )
                               )    No. B-02-109
    v.                         )
                               )
E.M. TROMINSKI, et al.,        )
                               )
    Defendants/Respondents.    )
_____)

GOVERNMENT'S EXHIBIT 2

*OPPOSED MOTION OF ANA PATRICIA CERDA-CARDENAS
TO BE JOINED AS A NAMED PLAINTIFF IN THE
INSTANT ACTION AND TO CONSOLIDATE WITH
HER INDIVIDUAL PETITION
FILED IN <u>HERNANDEZ-LEIJA v. TROMINSKI</u>, B-01-206*

*20*

United States District Court
Southern District of Texas
RECEIVED
*Filed*
MAY 2 8 2002

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ISRAEL HERNANDEZ-LEIJA, et al    )
                                 )
                                 )
v.                               )       C.A. No.   01-206
                                 )
                                 )
E.M. TROMINSKI, et al,           )
_____)

OPPOSED MOTION OF ANA PATRICIA CERDA-CARDENAS
TO BE JOINED AS A NAMED PLAINTIFF IN THE INSTANT ACTION
AND TO CONSOLIDATE WITH HER INDIVIDUAL PETITION

Ana Patricia Cerda-Cardenas ("Ms. Cerda"), through counsel, hereby
files the instant, presumptively opposed motion, to be joined as a
named Plaintiff in the instant action, seeking Writs of Habeas
Corpus, and Class Action Complaint for Declaratory and Injunctive
Relief.  Petitioner would note that she is already a member of the
putative class herein, which class has not yet been certified, and
that no Answer has yet been filed herein, such that joinder and
consolidation will not greatly inconvenience the Parties, or the
Court.  However, since Respondents therein are claiming that the
"notice" claims are moot if counsel has advised the Petitioner of
the existence of parole before the action is filed, a habeas
petition was separately filed, before such advisals were given.
*See, Cerda-Cardenas v. Trominski et al*, C.A. B-02-*109*  .  She
therefore also seeks that the actions be consolidated.

I.  JURISDICTION AND VENUE

1.  Jurisdiction herein is laid under 28 U.S.C. §§2241 (habeas
corpus), 1331 (federal question), and 1346(a)(2) (actions against
Officers of the United States), and pursuant to 28 U.S.C. §2201 et
seq, (Declaratory Judgment Act).

2.  Many of the acts and omissions complained of herein occurred in
Harlingen, Texas, where Respondent Trominski maintains his offices.

Further, Petitioner is currently detained by Respondents at the Port Isabel Service Processing Center, ("PISPC") in Bayview, Texas, within the jurisdiction of this Court.

## II.  THE PARTIES

3.  Petitioner Ana Patricia Cerda-Cardenas is a native and citizen of Mexico, and lawful permanent resident of the United States, ("LPR").  She is currently detained by Respondents, without bond, at PISPC, as an "arriving alien," allegedly pursuant to the authority of 8 U.S.C. §1101(a)(13)(C).  Petitioners' Exhibit L, herein incorporated by reference.

## III.  THE FACTS

4.  Petitioner Cerda is a lawful permanent resident, who was admitted in about 1984, at the age of two or three years. *Id.*

5.  Petitioner Cerda was admitted as a toddler, with her entire family.  Her mother has since passed away, but her father and siblings are still here.  They reside at 1929 Hackberry, in McAllen Texas, where they have been for about four or five years. *Id.*

6.  Petitioner Cerda has never before had any problems with the law, and was working as a cashier, when the incident occurred which led to her detention, on or about May 3, 2002.  She was returning from a brief, casual, and innocent trip to Mexico.  A friend had lent her his car.  He told her to put gas in it, because it was almost empty, and that when she got to the other side, she would be reimbursed.  She had no idea that the vehicle was carrying contraband, and would not have gotten involved if she had been even the least bit suspicious.  However, when she reached the bridge, marijuana was discovered in the vehicle, and she was detained, and sent to the detention center at PISPC. *Id.*

7.  The Agents at the bridge were so rough with her that she still has a painful lump on her hand, where she was injured during their attempt to get her to "admit" that she knew the drugs were there. No criminal charges were filed, but Respondents are still detaining her.  She asserts that she is innocent, and believes that she should be released.  But the INS detention guards have told her that if she tries to fight her case, they will file federal criminal charges against her.  They told her that she would spend ten years in prison, and that after that, would be deported anyway, so there is no point in trying to defend herself.  *Id.*

8.  Ms. Cerda wanted to pursue her legal remedies, in an attempt to retain her status as a lawful permanent resident, but had concluded that this was hopeless.  No-one ever explained to her that there exists any process by which she could request a bond, or that such a thing as "parole" existed.  To the contrary, she has been told that she is not eligible for a bond, and believing that, has not made any written applications for release. [1]  In fact, she has never seen her deportation officer.  *Id.*

9.  Ms. Cerda had wanted to talk to her deportation officer, because she wanted to see if there was some way she could get her deportation more quickly, since she believed that was going to be deported anyway.  But she never got the chance to do so.  *Id.*

10.  Ms. Cerda has been told that she has a hearing with Immigration Judge Ayala, on Wednesday, May 29, 2002.  Depending on

---

[1]  *See, Goonsuwan v. Ashcroft,* 252 F.3d 383,389 (5th Cir. 2001) ("Even when exhaustion is a jurisdictional bar, this Court recognizes an exception 'when administrative remedies are inadequate.'").  Mr. Gonzalez has also made a second request for a hearing with the Immigration Judge, based on the ever accumulating court decisions that §1226(c) is unconstitutional as applied to LPRs, but there has, as yet, been no ruling on said request.

3

what he tells her, she indicated that she may go ahead and sign her deportation. She is desperate, and scared, as she believes INS' threats, that they will prosecute her in federal court, and that she will go to jail for ten years. *Id.*

11. The undersigned has tried to tell her that this is an empty threat, but that is difficult for her to believe, given everything that she have been told at PISPC by INS. Since she believes that it is INS who has the ability to do file such charges, it is hard for her not to believe what they tell her. *Id.*

## IV. THE CAUSES OF ACTION
### A. HABEAS CORPUS

Petitioner asserts that her detention violates the laws and Constitution of the United States, as well as international law and treaty obligations with their native country of Mexico, which claims are cognizable in habeas corpus under 28 U.S.C. §2241.

She therefore requests that her habeas petition be granted, and that preliminary and permanent injunctions issue, requiring that Respondents: 1) advise her of the existence of parole; [2] 2) grant her a prompt hearing before an Immigration Judge at which she may request parole, and 3) that at said hearing her entitlement to parole under 8 U.S.C. §1182(d)(5)(A), with or without bond, be adjudicated on the basis of whether she presents a flight risk, or constitutes a threat or danger to the community.

### B. DECLARATORY JUDGMENT

Petitioner seeks a Declaratory Judgment, declaring that, as applied

---

[2] Given Respondents' position that a case is "moot" if the LPR has been informed of parole prior to filing her petition, the undersigned has not yet advised Ms. Cerda of the existence of this remedy, and will do so only after the instant petition is filed.

to LPRs detained as "arriving aliens" pending removal proceedings, the lack of any entitlement to a hearing on their requests for parole under 1182(d)(5)(A), (with or without a bond), and notice of the procedures for requesting same, violate the Due Process Clause. Furthermore, because Petitioner is an LPR, she asserts that she has a fundamental right to re-unite with his family within the United States, and a fundamental liberty interest in being able to seek bond while awaiting removal proceedings to determine whether she will be allowed to stay in the United States, or whether a final order of removal will be entered against her which then, and only then, would terminate her status as an LPR.

Petitioner also seeks a Declaratory Judgment, declaring that for Respondents to lawfully detain her, they must show significant special justification that her civil detention would be justified, in light of her status as LPR physically detained within the U.S.

### C.   INJUNCTIVE RELIEF

Petitioner further seeks preliminary and permanent injunctions, restraining and enjoining Respondents from not affording her a parole hearing before an Immigration Judge, at which her entitlement to parole, with or without bond, during removal proceedings is determined on the basis of whether she is a flight risk, or constitutes a threat or danger to the community.

### D.   EQUAL PROTECTION

Petitioner would note that the relief requested is very similar to that which has been requested in *Reyna-Montoya et al v. Trominski et al*, CA B-02-026, and which has been ordered by the Tenth, Ninth, and Third Circuits, in *Hoang v. Comfort*, 282 F.3d 1247 (10th Cir. 2002); *Kim v. Ziglar*, 276 F.3d 523 (9th Cir. 2002), and *Patel v. Zemski*, 275 F.3d 299 (3rd Cir. 2001), and has also been granted by countless United States District Courts, including, very recently,

5

the Northern District of Texas, in *Serrano v. Estrada,* No. 3-010CV-
1916-M (N.D.Tx. April 19, 2002). Petitioner Cerda asserts that it
violates Equal Protection to grant bond hearings to otherwise
similarly situated LPRs who were detained within the U.S., while
denying it to those detained at a port of entry, following a brief,
innocent, and casual visit to Mexico. She therefore prays that this
Honorable Court will follow these decisions and find that it is
unconstitutional to detain LPRs as "arriving aliens," within the
meaning of 8 U.S.C. §1101(a)(13)(C), without providing them with
notice of the availability of parole under 8 U.S.C. §1182(d)(5)(A),
and providing a hearing on their requests for parole, with or
without a bond, utilizing the criteria of 8 C.F.R. §212.5(c), as a
guide to determining whether they constitute a danger to the
community, or present a flight risk.

### E.    OTHER AND FURTHER RELIEF

Finally, Petitioner seeks such other and further relief, including
costs and attorneys fees, as this Honorable Court may find to be
just and appropriate under all of the circumstances.

### V.    CERTIFICATE OF CONSULTATION

On at approximately 8:15 am, on May 28, 2002, the undersigned
attempted to call Mr. Molina. She left a message on his answering
machine, requesting that he call to advise whether or not he would
oppose the joinder of Mr. Cerda as a named Plaintiff herein. As of
the preparation of the instant motion, Mr. Molina had not returned
her call. It is therefore presumed that he opposes the motion.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison

6

San Benito, TX 78586                    Harlingen, TX 78550
(956) 421-3226                          (956) 425-3701
(956) 421-3423 (fax)                    (956) 428-3731 (fax)
Fed. ID.  1178
Texas Bar 03052800

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing with Exhibit L and proposed
order, was mailed to Ernesto Molina, Attorney, OIL, Box 878 Ben
Franklin Sta. Wash. D.C. 20044, on this 28th day of May, 2002.



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ANA PATRICIA CERDA,            )
    et al,                    )
                              )
    Plaintiff/Petitioner,     )
                              )     No. B-02-109
    v.                        )
                              )
E.M. TROMINSKI, et al.,        )
                              )
    Defendants/Respondents.   )
_____)

GOVERNMENT'S EXHIBIT 3

CERDA'S PAROLE REQUEST

# LAW OFFICES OF LISA S. BRODY-GA
## 17891 Landrum Park Rd.
### San Benito, Texas 78586
### (956) 421-3226
### FAX: 421-3423
May 28, 2002

Immigration & Naturalization Service
2102 Teege and/or PISPC
Harlingen, TX 78550                    HAND DELIVERED

Re: Ana Patricia Cerda-Cardenas, A44 344 250
    Request for Parole

Dear Mr. Cabrera and Mr. Guzman:

Request is hereby made that Ms. Cerda-Cardenas be paroled from INS
custody either with no bond, or with a bond of no more than $1,500.

Ms. Cerda is another lawful permanent resident, held without bond
as an "arriving alien," under the "reason to believe" standard of
§212(a)(2)(C) of the Act. She immigrated to the U.S. at the age of
approximately three years, in about 1984, with her entire family.
Her mother has since passed away, but her father and siblings are
still here. They live at 1929 Hackberry, in McAllen Texas, where
they have been for about four or five years. She has never before
had any problems with the law, and was working as a cashier, when
the incident occurred which led to her detention.

Ms. Cerda was detained by INS on May 3, 2002. She was returning
from a brief, casual, and innocent trip to Mexico. A friend had
lent her his car. He told her to put gas in it, because it was
almost empty, and that when she got to the other side, she would be
reimbursed. She had no idea that the vehicle was carrying
contraband, and would not have gotten involved if she had been even
the least bit suspicious. However, when she reached the bridge,
they discovered marijuana in the vehicle, and she was detained, and
sent to PISPC. They were so rough with her that she still has a
painful lump on her hand, where she was injured during their
attempt to get her to "admit" that she knew the drugs were there.
She never did admit it, because she was innocent. No criminal
charges were filed, but she is still detained. Her first appearance
before the Immigration Judge is for tomorrow. She believes she is
innocent, and that she should be released. But the "green guards"
have told her that if she tries to fight her case, they will put
federal criminal charges against her. They have told her that she
will be in prison for ten years, and that after that, she will be
deported anyway, so there is no point in trying to defend herself.

Ms. Cerda wanted to pursue her legal remedies, in an attempt to retain her status as a lawful permanent resident, but had concluded that this was hopeless.  No-one ever explained to her that there exists any process by which she could request a bond, or even that such a thing as "parole" existed.  To the contrary, she has been told that she is not eligible for a bond, and believing that, has not made any written applications for release.  In fact, she has never seen her deportation officer.  She wanted to talk to the officer, because she wanted to see if there was some way she could get my deportation more quickly, since she was going to be deported anyway.  But fortunately, she never got the chance to do so.

Ms. Cerda is desperate, and scared, as she believes the detention offers' threats, that they will prosecute her in federal court, and that she will go to jail for ten years.  The undersigned has tried to tell her that this is an empty threat, but that is hard for her to believe, given everything that she has been told.

The undersigned has agreed to represent her, pro bono, in her removal case.  Her first hearing is for tomorrow, at 9:00 a.m., with Immigration Judge Ayala.

A signed G-28 is enclosed.

Sincerely,

Lisa S. Brodyaga,
Attorney at Law

Encl/  As stated.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ANA PATRICIA CERDA,            )
    et al,                     )
                               )
    Plaintiff/Petitioner,      )
                               )     No. B-02-109
    v.                         )
                               )
E.M. TROMINSKI, et al.,        )
                               )
    Defendants/Respondents.    )
_____)

GOVERNMENT'S EXHIBIT 4

LETTER REGARDING GRANT OF PAROLE



**U.S. Department of Justice**
Immigration and Naturalization Service

HLG50/1.1.2

_2102 Teege Avenue_
_Harlingen, Texas 78550_

June 3, 2002

Law Office of Lisa S: Brodyaga
17891 Landrum Park Rd.
San Benito, Texas 78586

Reference: Ana Patricia CERDA-Cardenas A44 344 250

Dear Ms. Brodyaga:

Your request for the release on parole of Ms. Ana Patricia CERDA-Cardenas from
service custody has been reviewed and is granted. She will be released once a parole bond in the
amount of $1,500.00 has been received. It must be clear that this discretion _does not_ confer any
immigration status or travel to the United States (unless you request and receive advanced
parole) or immunity from future removal proceedings. Employment is authorized.

Sincerely,

Aaron L. Cabrera
Acting Assistant District Director
for Detention & Removals

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ANA PATRICIA CERDA,            )
    et al,                     )
                           )
    Plaintiff/Petitioner,      )
                           )    No. B-02-109
    v.                         )
                           )
E.M. TROMINSKI, et al.,        )
                           )
    Defendants/Respondents.    )
_____)

GOVERNMENT'S EXHIBIT 5

*PETITIONERS' SUPPLEMENT TO OPPOSED MOTION*
*OF PATRICIA CERDA-CARDENAS TO BE JOINED*
*AS A NAMED PLAINTIFF IN HERNANDEZ-LEJA, AND*
*TO CONSOLIDATE THE TWO ACTION*
*FILED IN HERNANDEZ-LEIJA v. TROMINSKI, B-01-206*

2B

United States District Court
Southern District of Texas
FILED

JUN 1 0 2002

Michael N. Milby
Clerk of Court

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

ISRAEL HERNANDEZ-LEIJA, et al          )
                                       )
v.                                     )          C.A. B-01-206 ✓
                                       )
E.M. TROMINSKI, et al,                 )
_____)

and

ANA PATRICIA CERDA-CARDENAS,           )
                                       )
v.                                     )          C.A. B-02-109
                                       )
E.M. TROMINSKI, INS DISTRICT           )
  DIRECTOR, AND                        )
JOHN ASHCROFT, U.S. ATTORNEY GENERAL.  )
_____)

**PETITIONERS' SUPPLEMENT TO OPPOSED MOTION OF**
**ANA PATRICIA CERDA-CARDENAS TO BE JOINED AS A NAMED PLAINTIFF IN**
**HERNANDEZ-LEIJA, AND TO CONSOLIDATE THE TWO ACTIONS.**

Petitioners in both actions, through counsel, hereby file the
instant supplement to their opposed motion, seeking to join
Petitioner Cerda as a named Plaintiff in *Hernandez-Leija*, and
requesting that the two actions be consolidated.

Petitioner Cerda would note that she is already a member of the
putative class in *Hernandez-Leija*, which class has not yet been
certified, and that no Answer or Return has yet been filed in
either action. Therefore joinder and consolidation will not greatly
inconvenience the Parties, or the Court.   However, since
Respondents in *Hernandez-Leija* are claiming that the "notice"
claims are moot once counsel has advised the Petitioner of the
existence of parole before the action is filed, a habeas petition
was separately filed on behalf of Ms. Cerda, before such advisals
were given, and before a request for parole was made on her behalf.

After said petition was filed, the undersigned filed a request for parole on Ms. Cerda's behalf. Said request was granted, and on Friday, June 7, 2002, she posted bond and was released. As a result, joinder of Ms. Cerda will no longer accomplish the objective of including a petitioner who had not learned of the existence of "parole" prior to being made a party, unless her individual petition is also consolidated with the *Hernandez-Leija* action. And although the undersigned considers that Respondents' position that the notice claim is moot with respect to the named Petitioners is incorrect, Petitioners also consider that the best means of disposing of said claim is to consolidate the two actions, and to allow Ms. Cerda to proceed as named Plaintiff on behalf of the putative class with respect to the notice claim. [1]

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID.  1178
Texas Bar 03052800

Thelma O. Garcia, Attorney
301 E. Madison
Harlingen, TX 78550
(956) 425-3701
(956) 428-3731 (fax)

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, with proposed Order, was mailed to Ernesto Molina, Attorney, OIL, Box 878 Ben Franklin Sta. Wash. D.C. 20044, on this 8th day of June, 2002.

---

[1] Although Respondents formulate the issue as mootness, it is more accurately a question of standing. Ms. Cerda had no knowledge of parole when her petition was filed, so she has standing to raise the issue. It is not moot, because she could encounter the same problem in the future, when counsel was not available to request parole on her behalf, or explain how to make such a request.

2