United States District Court
Southern District of Texas
FILED

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

AUG 2 8 2002

Michael N. Milby
Clerk of Court

ANA PATRICIA CERDA-CARDENAS,          )
                                      )
v.                                    )    C.A. B-02-109
                                      )
E.M. TROMINSKI, et al.                )
_____)

PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION TO DISMISS

Ana Patricia Cerda-Cardenas ("Ms. Cerda"), through counsel, hereby files the instant opposition to Respondents' Motion to Dismiss her Petition, seeking a Writ of Habeas Corpus, and Complaint for Declaratory and Injunctive Relief, herein cited as (INS:__). Said motion must be viewed in the context of Respondents' attempt to avoid the issue of whether LPRs' placed in proceedings as "arriving aliens" under 8 U.S.C. §1225(b)(2) are entitled to notice of the possibility of seeking parole, and to Due Process in adjudicating their applications, by setting up a "Catch-22" situation. [1]

Where such LPRs file suit *after* having learned of the existence of parole, as in *Hernandez-Leija*, Respondents claim that they lack standing to raise the issue of notice, because they had received notice before suit was filed. And where, as here, suit is filed *before* the LPR has learned of parole, INS asserts that the claim is improper, because it was not filed by the alien, "with her approval," or by a "qualified next friend." (INS:8-10). [2]

_____

[1] Petitioner is a member of the putative class in *Hernandez-Leija et al v. Trominski et al*, C.A. B-01-206. She also has a pending motion to consolidate her petition with that case. Notably, Respondents never filed an opposition to said motion. Under Local Rule 7.4, it is therefore deemed to be unopposed.

[2] In theory, an attorney could file an action on behalf of such an LPR, and *never* inform the Petitioner of the existence of parole. However, this would create other problems, not the least of which would be a breach of one's ethical duty to the client.

If Respondents' assertions were to be accepted at face value, logically, the issue of whether such a person is entitled to notice could never be brought before the Court. However, there are a number of good reasons why these arguments are without merit.

## I.   ISSUES PRESENTED

A.  MS. CERDA'S CLAIMS ARE NOT MOOT, WHERE SHE REMAINS AN LPR, AND COULD ENCOUNTER SIMILAR PROBLEMS IN THE FUTURE, AND WHERE THE NOTICE SHE SEEKS IS NOT SIMPLY THE NOTICE OF THE EXISTENCE OF PAROLE, BUT OF THE MEANS FOR REQUESTING IT, WHICH MEANS COULD VARY SIGNIFICANTLY DEPENDING ON THE CIRCUMSTANCES OF ANY FUTURE INCIDENT

B.  THE INSTANT CASE IS NOT SUBJECT TO DISMISSAL UNDER F.R.Civ.P. RULE 12(b)(1), BECAUSE THERE EXIST NO ADMINISTRATIVE REMEDIES TO EXHAUST WITH RESPECT TO THE ISSUE OF NOTICE.

C.  THE UNDERSIGNED WAS ACTING ON BEHALF OF PETITIONER WHERE THE PETITIONER HAD AGREED TO HAVE THE INSTANT ACTION FILED ON HER BEHALF, FOR THE PURPOSE OF TRYING TO GET HER OUT OF DETENTION, EVEN IF SHE DID NOT KNOW THE LEGAL THEORIES WHICH WERE TO BE PROPOUNDED

D.  PETITIONER HAS STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED

E.  THE SCOPE OF RESPONDENTS' DISCRETION TO PAROLE AN INDIVIDUAL ALIEN IS IRRELEVANT TO PETITIONER'S EQUAL PROTECTION ARGUMENT, WHICH FOCUSES ON THE PROCEDURES, NOT THE EXERCISE OF DISCRETION IN AN INDIVIDUAL CASE.

F.  UNDER THE BALANCING TEST OF MATHEWS v. ELDRIGDE, THE INTERESTS OF AN INDIVIDUAL IN LIBERTY CLEARLY OUTWEIGH ANY ADMINISTRATIVE CONVENIENCE TO THE RESPONDENTS OF GRANTING A DUE PROCESS HEARING.

## II.  ARGUMENT

Most of Respondents' arguments are identical to those raised in their Motion to Dismiss in their "Motion to Dismiss," in *Hernandez-Leija et al v. Trominski et al,* CA B-01-206, filed on or about May 24, 2002. And, as shown in the Petitioners Opposition thereto, filed May 28, 2002, and incorporated herein by reference, (and cited as (PsOppHern:__)), these arguments are without merit.

**A. MS. CERDA'S CLAIMS ARE NOT MOOT, WHERE SHE REMAINS AN LPR, AND COULD ENCOUNTER SIMILAR PROBLEMS IN THE FUTURE, AND WHERE THE NOTICE SHE SEEKS IS NOT SIMPLY THE NOTICE OF THE EXISTENCE OF PAROLE, BUT OF THE MEANS FOR REQUESTING IT, WHICH MEANS COULD VARY SIGNIFICANTLY DEPENDING ON THE CIRCUMSTANCES OF ANY FUTURE INCIDENT**

On the merits, INS first argues, (INS:4-6), that Ms. Cerda's notice claim is moot.[3] As previously discussed, (PsOppHern:13-14), this is a quintessential example of a situation that is capable of repetition, yet evading review. *See, Roe v. Wade*, 410 U.S. 113 (1973). And contrary to Respondents' claim, (P:4), Ms. Cerda had suffered an injury, and therefore had standing, when the suit was filed, since the failure to provide notice delayed her request for parole. This caused her to be unnecessarily incarcerated for a period of weeks, resulting in significant mental anguish, loss of wages, and other cognizable injuries. *See, Loa-Herrera v. Trominski,* 231 F.3d 984,987-88 (5th Cir.2000). Further, the problem could well be repeated, even though she has been released on parole. She is an LPR, and could find herself in a confrontation with INS at the border in the future, when counsel was not available to explain the mechanics of requesting parole, much less, to prepare and file the request on her behalf.[4] She therefore continues to have a "personal stake" in the outcome.

---

[3] This claim was also made at pp. 10-12 of the Respondents' motion to dismiss in *Hernandez-Leija*, (PsOppHern:13-14).

[4] It cannot be taken as a given, as INS appears to assume, (INS:5-6) that the undersigned will always be available to represent persons such as Ms. Cerda. And being charged with knowledge as to the availability of parole is not the same as knowing **how** to make such a request. For example, even if, as Respondents propose, INS is not folded into some new "Homeland Security" agency, the mechanics of making a parole request for a detained LPR are not self-evident, and if she were detained, for example, in Laredo, rather than Brownsville, what little she learned from the present situation would be of no assistance.

3

Respondents also incorrectly assert that, in order to avoid mootness she must show "that there is a <u>certainty</u>" that she will face the same problem in the future. (INS:5). This is simply not the law, where, as here, the problem is one that is capable of repetition, yet evading review. *Roe v. Wade, supra.* *See also, Friends of the Earth v. Laidlaw Environmental Serv.,* 120 S.Ct. 693 (2000) (Reiterating the "capable of repetition yet evading review" doctrine, and further holding that voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice under the mootness doctrine; if it did, the courts would be compelled to leave the defendant free to return to his old ways. A case might become moot based on a defendant's voluntary conduct if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur, but the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness).

**B. THE INSTANT CASE IS NOT SUBJECT TO DISMISSAL UNDER F.R.Civ.P. RULE 12(b)(1), BECAUSE THERE EXIST NO ADMINISTRATIVE REMEDIES TO EXHAUST WITH RESPECT TO THE ISSUE OF NOTICE.**

Respondents also urge that the case should be dismissed because Ms. Cerda has not exhausted her administrative remedies. (INS:6-8). However, what she seeks herein is a requirement that INS provide proper *notice* of the existence of parole, and the means of requesting it, when LPRs are detained as arriving aliens. [5]

There are no administrative remedies to exhaust with respect to this demand. This argument is therefore wholly without merit.

---

[5] Respondents claim that Ms. Cerda requested parole on May 28, 2002, and filed the instant petition three days thereafter. (INS:7). This is incorrect. In fact, she filed the instant petition on May 28, 2002, a few hours *prior* to requesting parole.

**C.   THE UNDERSIGNED WAS ACTING ON BEHALF OF PETITIONER WHEN THE INSTANT ACTION WAS FILED, EVEN IF MS. CERDA DID NOT KNOW THE LEGAL THEORIES TO BE PROPOUNDED.**

Respondents also assert that the action should be dismissed because it was "not filed by [Ms. Cerda], with her knowledge and approval, or by a qualified next friend." (INS:8). This is simply factually incorrect. Ms. Cerda agreed that an action be filed in federal court on her behalf. That she was unaware of the specifics of the causes of action to be asserted therein does not negate this authorization. And the details of her conversations with the undersigned regarding the action are, obviously, confidential.

Further, Respondents' claim that only a "next friend" (and not an attorney) can act "on behalf" of a client needs no rebuttal.

**D.   PETITIONER HAS STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Respondents also re-urge their position that the notice claim should be dismissed under Rule 12(b)(6). (INS:10-13). *See also,* (RsMotDis:14-18). They again assert that the proper test is that of *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306 (1950), [6] and that the case at bar is "governed by" *Mullane* and its progeny, including *City of West Covina v. Perkins,* 525 U.S. 234 (1999), and *Dusenbery v. U.S.,* 122 S.Ct. 694 (2002). (INS:11-13). *See also,* (RsMotDis:17). Although the claimant in *Dusenbury* was also detained, the similarities end there. That case held that Due Process was satisfied where a forfeiture notice was sent to the property owner: (1) by certified mail to the prison where he was incarcerated, (2) to the residence where the arrest occurred, and

---

[6]  In fact, although the notice and hearing claims are closely entwined, it is the hearing claim that is most clearly subject to the balancing test of *Mathews v. Eldridge, supra,* and the notice claim is more properly addressed under *Mullane.*

(3) to his address in the town where his mother lived. Petitioner would be satisfied with far less: perhaps one written notice, in Spanish, and oral explanation of parole and how to request it, given to LPRs who are detained at a port of entry.

The only "notice" they receive of parole under §1182(d)(5)(A), and the means for requesting it, is the mere existence of the statute and regulations. The evidence developed at the hearing in *Hernandez-Leija,* and the circumstances of the case at bar, clearly show that this is grossly inadequate to provide notice of the availability and means for requesting parole that are "reasonab[le] ... under all the circumstances" for LPRs detained at PISPC. [7]

**E.  THE SCOPE OF RESPONDENTS' DISCRETION TO PAROLE AN INDIVIDUAL ALIEN IS IRRELEVANT TO PETITIONER'S EQUAL PROTECTION ARGUMENT, WHICH FOCUSES ON THE PROCEDURES, NOT THE EXERCISE OF DISCRETION IN AN INDIVIDUAL CASE.**

Respondents next claim that the "standard of review of the Attorney General's decision not to parole an alien into the United States is an extremely deferential one." (INS14). In support of that contention, they cite a series of cases which have nothing to do with lawful permanent residents. Further, Ms. Cerda is not challenging the exercise of discretion. She is challenging the procedures which caused her to be unnecessarily detained for almost a month, and to almost lose her LPR status, even though she has never been convicted of any offense, simply because she was told by (and believed) agents of Respondents, who told her that she was not entitled to a bond, and that she would be deported.

---

[7]    As illustrated by the case at bar, even LPRs who are improperly detained, because they have been convicted of no offense, and in fact, committed none, could lose their LPR status, (and some doubtless have), because of lack of notice of the possibility of parole, and the means of requesting it.

INS also asserts, (INS:19) that:

> Congress subjected returning, criminal aliens to arriving
> alien status, knowing full well that they, too, would
> have to demonstrate that they merited parole.  It is not
> for Cerda, through a lawsuit, to displace Congressional
> choices.

But Ms. Cerda is not a "criminal alien."  She was never charged,
let alone convicted, of any criminal offense.  And the plain
language of 8 U.S.C. §1101(a)(13)(C) shows that Congress never
intended to subject LPRs to the "reason to believe" standard of
inadmissibility for suspected drug traffickers applicable to non-
LPRs under 8 U.S.C. §1182(a)(2)(C). [8]  Under §1101(a)(13)(C), LPRs
such as Ms. Cerda can only be held as "arriving aliens" if certain
criteria are met.  That there is "reason to believe" that she might
be a drug trafficker (which she vehemently denies), is insufficient
under that section.  Rather, INS must prove that she "**has committed
an offense identified in section 212(a)(2)**." (emphasis added).

Drug trafficking is clearly such an offense.  But to render Ms.
Cerda an "arriving alien," INS must prove that she "has committed"
that offense.  There is no such crime as an immigration officer
having "reason to believe" that she is a drug trafficker.
Logically, one cannot commit an offense that consists of the state
of another person's mind, no matter how "reasonable" the belief
held by that person might be.  What someone else thinks cannot be
a crime.  Therefore, Ms. Cerda was never properly held as an
"arriving alien" in the first place.  That she was detained, not
only without having been advised of the possibility of parole, but

---

[8]  It is also highly doubtful that such a situation could pass
constitutional muster, since LPRs seeking readmission are entitled
to Due Process.  To deport a lawful permanent resident solely
because some INS official thinks she may have been involved in drug
trafficking, without proof that she actually **was** involved, would
violate both procedural and substantive Due Process.

that while detained, she was affirmatively misled that there was no way in which she could get out on bond, borders on tortious.  It also points up the absolute necessity of informing such persons that parole is a possibility, and how to go about requesting it. [9]

**F.  UNDER THE BALANCING TEST OF MATHEWS v. ELDRIGDE, THE INTERESTS OF AN INDIVIDUAL IN LIBERTY CLEARLY OUTWEIGH ANY ADMINISTRATIVE CONVENIENCE TO THE RESPONDENTS OF GRANTING A DUE PROCESS HEARING.**

For the same reasons, the instant case is a perfect example of why the *Mathews* balancing test swings so strongly in favor of the LPR.

First, INS claims that Ms. Cerda has no liberty interest in parole. (INS:23-24).  But the cases cited do not support this claim.  For example, *Finley v. INS*, 210 F.3d 556 (5th Cir. 2000), was based on *Max-George v. Reno*, 205 F.3d 194 (5th Cir.2000), which was overruled by *INS v. St. Cyr*, 121 S.Ct. 2271 (2001).  *St. Cyr*, and its companion case, *Zadvydas v. Davis*, 121 S.Ct. 2492 (2001) strongly support Ms. Cerda's contention that, as an LPR physically present in the United States, she has a liberty interest in, and therefore Due Process rights with respect to, release from custody.

*See also, Landon v. Plasencia*, 459 U.S. 24 (1982), and *Molina v. Sewell*, 983 F.2d 676 (5th Cir. 1993), both of which stand for the

---

[9]    The undersigned deliberately did not serve the instant petition until after Ms. Cerda's parole request had been adjudicated, so that the pending litigation would not influence Respondents' decision on her parole request. The fact that it was granted so promptly demonstrates that her lengthy incarceration was completely unnecessary. Had she been told of the existence of, and how to request parole, she could have bonded out within days of her arrest, and would not have suffered the mental anguish which accompanied the fact that she was told, and believed, that there was no remedy:  that she would be deported, and that if she tried to fight her deportation, she would go to prison for a lengthy period of time.

proposition that LPRs at the border are entitled to Due Process. [10]

Just as *St. Cyr* and *Zadvydas* were decided on statutory grounds, to avoid reaching the very serious constitutional problems which would otherwise have arisen, the same is possible in the instant case. The constitutional problems raised herein could be avoided, as discussed in *Loa-Herrera* and *Hernandez-Leija*, by the same type of creative statutory construction that the Supreme Court invoked in *St. Cyr* and *Zadvydas*. This Court could read certain requirements into the statute, (specifically, the requirements of notice of the possibility of parole, and a hearing on any request for such relief), just as the Supreme Court read certain limitations, and requirements, into the statutes involved in those two cases.

INS also urges, (INS:28), that:

> The balance of the risk of erroneous deprivation is
> minimal, the value of additional procedures de minimus,
> and government retains a strong interest in the
> procedures presently afforded for parole.

To the contrary, the case at bar presents a text-book case for the fact that this is not so. The risk of erroneous deprivation from an LPR detained as an "arriving alien" not being informed of parole is huge. In the case at bar, Ms. Cerda came within a whisker of losing her LPR status, simply because she was told (and believed) that she was not entitled to bond, that it was futile to fight her case, and that if she tried, she would spend years in prison. *But for* the fortuitous circumstance that the undersigned was visiting other LPR women with whom she was detained, and Ms. Cerda passed her name and A-number to the undersigned with one of these women,

---

[10]  *Gisbert v. Attorney General*, 998 F.2d 1437,1443 (5th Cir. 1993), upon which INS relies so heavily, not only preceded *St. Cyr*, but involved convicted criminals whose immigration cases had long since been completed, and who were not LPRs.

she would now be in Mexico, if not in jail, appearing before this
Court, for unlawful re-entry after deportation. This, even though
she was never even charged, let alone convicted, of any offense.
But had she been advised of the existence of, and procedure for
requesting parole, she would have been promptly released.

Similarly, the value of the added procedure, i.e., advice of the
existence of parole, and the means for requesting it, would have
made all the difference in the world, as seen by the fact that,
once such a request was made, it was granted almost immediately.

And besides its (illegitimate) interest in strong-arming LPRs to
give up their fight to retain their resident status, the government
has NO INTEREST WHATSOEVER in maintaining a procedure by which LPRs
such as Ms. Cerda can be given (and believe) incorrect advice by
their jailers: that they are not eligible for bond, that they will
be deported anyway, and that they will go to prison if they try to
fight her deportation, so they might as well give up. INS has
identified no legitimate interest at all in keeping an LPR ignorant
of her rights. Nor, it is submitted, does any such interest exist.

WHEREFORE, it is respectfully urged that Respondent's Motion to
Dismiss be denied. It is also urged that, as requested in her
pending motion, the instant case be consolidated with *Hernandez-
Leija et al v. Trominski et al, supra,* where these issues are being
litigated in the context of a class action.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701

(956) 421-3423 (fax)                    (956) 428-3731 (fax)
Fed. ID.  1178
Texas Bar 03052800

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first-class postage prepaid, to Ernesto Molina, Attorney, OIL, P.O. Box 878, Ben Franklin Sta., Washington, D.C. 20044, on August 28, 2002.

_____
August 28, 2002